# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| LEONARD SANDERS, Individually and on behalf of all those Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>MPRI, INC., L-3 COMMUNICATIONS, L-3 COMMUNICATIONS CORPORATION, and L-3 SERVICES , INC.,<br><br>    Defendants. | CIVIL ACTION NO.  5:08-CV-345R |

## STIPULATED SETTLEMENT AGREEMENT AND RELEASE

Plaintiff Leonard Sanders, individually ("Plaintiff") and on behalf of the collective action settlement members he represents, and L-3 Services, Inc. ("Defendants")[1] (together with Plaintiff, "Parties") enter into this Stipulated Settlement Agreement and Release as of September 9, 2009 ("Settlement Agreement").

### RECITALS

WHEREAS, Plaintiff brought this action on behalf of himself and others by filing a Complaint on April 3, 2008, alleging, among other things, that Defendants (i) improperly classified their military recruiters as exempt and, as a result, failed to pay them overtime wages under the Fair Labor Standards Act ("FLSA") and (ii) did not properly record all hours worked by their military recruiters (the "Collective Action");

---

[1] Plaintiff named MPRI, Inc., L-3 Communications, L-3 Communications Corporation, and L-3 Services, Inc. as defendants in the Complaint.  The Parties acknowledge that (i) as December 31, 2007, MPRI, Inc. merged into L-3 Services, Inc. and ceased to exist; (ii) L-3 Services, Inc. does business as L-3 Services and as "MPRI"; (iii) L-3 Communications Corporation does business as L-3 Communications Corporation and "L-3 Communications"; and (iv) L-3 Communications Corporation never employed any of the collective action settlement members.

WHEREAS, Defendants answered the Complaint denying all allegations and asserting that they properly classified their military recruiters as exempt under the FLSA.  Defendants continue to deny any liability or wrongdoing of any kind whatsoever associated with the claims alleged in the Collective Action, including, without limitation, that they failed to pay wages or overtime compensation, or otherwise violated their legal obligations;

WHEREAS, the Court conditionally certified the Collective Action, on August 27, 2008, and, as of the end of the opt-in period, two-hundred and two (202) collective action settlement members joined the Collective Action;

WHEREAS, on March 13, 2009, Defendants filed a Motion Under 9 U.S.C. § 3 To Dismiss and/or Stay Proceedings With Respect To 128 Plaintiffs Who Executed Arbitration Agreements ("Motion to Dismiss/Stay");

WHEREAS, Defendants have not filed a Motion to Decertify the Conditionally Certified Class ("Motion to Decertify");

WHEREAS, the Parties agreed to stay the Collective Action pending settlement negotiations;

WHEREAS, the Parties have engaged in extensive discovery, internal investigations, and litigation regarding the merits of the Collective Action, the Motion to Dismiss/Stay, and the Motion to Decertify;

WHEREAS, the Parties also have engaged in extensive settlement negotiations and, as a result of those negotiations, have agreed to settle Plaintiff's and others' claims according to the terms and conditions set forth herein, subject to the Court's consideration and approval; and

WHEREAS, for purposes of settlement only, Defendants agree that the parties to this agreement are similarly situated and are properly before the Court; however, if for any reason,

the Court does not grant final approval of the parties' settlement or if either Defendants exercise

their right to withdraw as set forth in Paragraph 8 below or if either Party exercises its rights to

withdraw as set forth in Paragraph 15 below, (i) the Settlement Agreement shall be null and void

*ab initio* and, neither the Settlement Agreement, nor any ancillary documents, actions, omissions,

statements, or filings in furtherance of settlement shall be admissible or offered into evidence in

the Collective Action or any other action for any purposes whatsoever; and (ii) Defendants shall

have the right to proceed with the Motion to Dismiss/Stay and the Motion to Decertify.

TERMS AND CONDITIONS

NOW, THEREFORE, in consideration of the terms and conditions contained herein and

for other good and valuable consideration, the receipt and adequacy of which is hereby

acknowledged, the Parties hereby warrant, covenant, and agree as follows:

## I.    <u>DEFINITIONS</u>

1.    As used herein, the following terms shall have the following meanings:

a.    "<u>Claims</u>" means from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, extent, executions, claims and demands whatsoever, in law or equity, whether known or unknown, foreseen or unforeseen, that Plaintiff and the Collective Action Settlement Members (as defined herein), individually or together, have ever had, or hereafter can, shall, or may have, from the beginning of the world to the date of this Agreement, against Defendants, arising from employment by Defendants, including, without limitation, classification as employees, nonpayment or inaccurate payment of overtime, wages and/or other work-related consideration under any federal, state or local law, and all wage and hour related remedies and damages that would or could have been alleged, including without limitation, restitution, equitable relief, liquidated damages, punitive damages, compensatory damages, interest, costs, expenses, other compensation or benefits, and penalties of any nature whatsoever.

b.    "<u>Collective Action</u>" means this conditionally certified collective action, styled as *Sanders et al. v. MPRI, Inc. et al.*, U.S.D.C. W.D.Okla. C.A. No. 5:08-CV-345R.

c.    "<u>Collective Action Settlement Members</u>" means Plaintiff and the following persons who were employed as Recruiters (Labor Codes 61 and 62) by MPRI, Inc. or L-3 Services, Inc. during the period from June 12, 2005 through June 12, 2008: (i) 202 persons that timely filed their written opt-in consents with the Court and (ii) Norman Brown, Thomas Entrott, Sean Hogan, Richard Jones, Ken Peebles, Victor Vicente, and Steve Young, who are 7 additional persons who fell within the collective action member definition, but who failed to timely file their written opt-in consents with the Court.

d.    "<u>Collective Action Counsel</u>" means the Young Law Firm, P.C. and Lovell, Lovell, Newsom & Isern, LLP.

e.    "<u>Collective Action Period</u>" means the period commencing on June 12, 2005 and ending on June 12, 2008.

f.    "<u>Defense Counsel</u>" means the law firms of Greenberg Traurig, LLP and Williams Box Forsee & Bullard PC.

g.    "<u>Effective Date</u>" means the date on which the following events have occurred: (i) the Settlement Agreement has been executed by (a) the Plaintiff, individually and as Class Representative, (b) Collective Action Counsel, individually and on behalf of the Collective Action Settlement Members, (c) Defendants, and (d) Defense Counsel, and (ii) the Court has entered its Final Approval and dismissed the Collective Action with prejudice.

h.    "<u>Final Approval</u>" means the Court's final determination that the Settlement Agreement is a fair and reasonable resolution to a bona fide dispute over FLSA provisions.

i.    "<u>Global Settlement Amount</u>" means the maximum total settlement payment under the Settlement Agreement, including all attorneys' fees and costs, and any other payments provided by the Settlement Agreement, except for any taxes or other payments required by Defendants in their capacity as an employer.

j.    "<u>Individual Settlement Award</u>" means the specific total payment under the Settlement Agreement for each Collective Action Settlement Member, which includes amounts for allegedly unpaid wages and overtime, as well as liquidated damages, as set forth in Paragraph 9 below.

## II.    <u>THE LITIGATION AND SETTLEMENT</u>

2.    Since discovery began in June of 2008, the Parties exchanged, reviewed, and analyzed over 40,000 pages of documents, including personnel files, timesheets, paystubs and other payroll documents for the Collective Action Settlement Members, as well as policy

manuals, training materials, and corporate documents regarding the classification of the Collective Action Settlement Members as exempt under the FLSA and Defendants' good faith belief in that classification.    In addition, Plaintiff and various members of Defendants' management staff, as well as two Fed. R. Civ. P. 30(b)(6) designees, have been deposed. Furthermore, through the course of the Collective Action, the Parties engaged in numerous hard-fought disputes over various procedural and substantive issues that required extensive information gathering, detailed briefing, and argument before the Court.

3.    In addition to the formal discovery described and litigation above, Collective Action Counsel represent that they have conducted at least one and often two or more detailed interviews with the majority of the Collective Action Settlement Members for the purpose of gathering information and documents necessary to evaluate their individual claims and that those claims have been evaluated individually to the extent possible (*see infra* n. 2) and not on an aggregate basis.

4.    Defendants have conducted an investigation of the claims in the Collective Action and evaluated the information elicited through their investigation and have concluded that, despite their belief that they are not liable for any of the claims and the merits of the defenses raised to those claims, they will enter into the Settlement Agreement to obtain the conclusive and complete dismissal of the Collective Action and to avoid: (i) the further expense, inconvenience and burden litigating the claims asserted in, or which could have been asserted in, the Collective Action, (ii) the distraction and diversion of their personnel and resources, and (iii) the risk and uncertainty of the outcome inherent in any litigation.

5.    The Parties arrived at the Global Settlement Amount by using data exchanged through discovery and constructing their own detailed, damages models and calculations for each

of the Collective Action Settlement Members during the Collective Action Period. Using those models and calculations as a foundation, the parties met in Dallas, Texas on two separate occasions and, over the course of several months after those meetings, the Parties (i) engaged in arm's-length settlement negotiations, (ii) analyzed and compared the results of their respective calculations, (iii) identified and ultimately resolved disputes regarding potential liability and damages, including liquidated damages and attorneys' fees, to which the Collective Action Settlement Members may have been entitled to had the Collective Action proceeded to trial, and (iv) agreed upon an appropriate adjustments to those potential damages for each Collective Action Settlement Member to account for the risk that the Court might ultimately have found they are not entitled to any overtime compensation, liquidated damages, or attorneys' fees at trial. In doing so, the Parties agreed to Individual Settlement Amounts for each Collective Action Settlement Member as set forth on **Exhibit A** attached hereto.

6.      Based on the above, the Parties agree that the Settlement Agreement is a fair and reasonable resolution to a bona fide dispute over FLSA provisions.

## III.    <u>AUTHORITY AND APPROVAL</u>

7.      Collective Action Counsel represent and warrant that they have forwarded, by mail and email (if available), to each Collective Action Settlement Member, a copy of this Settlement Agreement, without **Exhibit A**, and a Notice of Settlement Award containing a summary of the settlement terms, including each Collective Action Settlement Member's Individual Settlement Award, the Global Settlement Amount, attorneys' fees and costs, and an explanation that failure to object to the settlement within 21 days means he or she will be bound by the terms of the Settlement Agreement.

8.      Should the Court sustain objections, if any, by 10%, or more, of the Collective Action Settlement Members, Defendants may declare this Settlement Agreement null and void *ab initio* and the Parties shall be restored, without prejudice, to their respective pre-settlement litigation positions.

## IV.    <u>SETTLEMENT PAYMENTS</u>

9.      <u>Global Settlement Amount</u>.    Assuming that no Collective Action Settlement Members' objections, if any, are sustained, the Global Settlement Amount shall be Eight Hundred Sixty Thousand, Nine Hundred Fifty-Five dollars ($860,956.00), which consists of the following:

a.       Individual Settlement Amounts and Incentive Payments totaling $485,957.00 as set forth herein and on **Exhibit A** attached hereto;

b.      $332,261.00 in attorneys' fees and $42,738.00 in costs for Collective Action Counsel, of which (i) are to compensate Collective Action Counsel for all the work already performed in the Collective Action as of the date of the Settlement Agreement and all the work remaining to be performed in effectuating the terms and conditions of the Settlement Agreement, including, without limitation, securing the Court's Final Approval, making sure the Settlement Agreement is fairly administered and implemented, obtaining dismissal with prejudice of the Collective Action, and all other matters related hereto; (ii) Collective Action Counsel agree not to seek more than from the Court; and (iii) Defendants do not oppose, will not encourage or assist a third-party in opposing, and agree to the reasonableness of the amount.

c.      Should any Collective Action Settlement Member object to the Settlement Agreement, and if such objection is sustained by the Court, the Parties' shall reduce (1) the Global Settlement Amount by the already-determined Individual Settlement Amount and

Incentive Payment, if any, that member was to receive as set forth herein and on **Exhibit A** and (2) attorneys' fees awarded to Collective Action Counsel by a proportional, pro rata share of the total fees determined by dividing the total amount of fees by 210 and multiplying that number by the number of Collective Action Settlement Members whose objections to the Settlement Agreement are sustained.    Nothing contained herein shall limit Defendants' rights under Paragraphs 8 and 15 of the Settlement Agreement.

        10.    <u>Tax Treatment of Individual Settlement Amounts</u>.

        a.    The Parties divided the Collective Action Settlement Members into two groups for the purpose of calculating their Individual Settlement Amounts.    Group 1 consists of 81 persons and Group 2 consists of 129 persons, as identified on **Exhibit A** attached hereto.

        b.    The Individual Settlement Amounts for the members of each group will be treated as either alleged unpaid wages or alleged liquidated damages and interest as determined by the formulas identified below and as set forth in the specific dollar amounts set forth on **Exhibit A** attached hereto.    All alleged unpaid wages will be subject to appropriate payroll withholdings, and reported on an IRS Form W-2.    All alleged liquidated damages and interest under applicable law shall not be subject to payroll withholdings, and shall be reported on an IRS Form 1099.

        c.    Collective Action Settlement Members and Defendants will each bear their respective share of state and federal payroll taxes on the percentage amounts set forth herein. Defendants' payment of their portion of any payroll tax shall be in addition to its Global Settlement Amount.

        d.    For each Collective Action Settlement Member, Defendants shall report, on an IRS Form 1099, the Collective Action Settlement Member's pro rata share of attorneys' fees and costs paid to Collective Action Counsel, as set forth on **Exhibit A**.

11.    <u>Formulas for Determining Individual Settlements</u>.

a.    Calculation of the amounts to be recovered by the Group 1 was based primarily[2] on the following:

(i).    all members will receive overtime compensation for 100% of their recorded overtime hours during workweeks when the minimum salary basis requirement arguably *was not* met;

(ii).    all members will receive overtime compensation for 40% of their recorded overtime hours during workweeks when the minimum salary basis requirement arguably *was* met;

(iii).    63 members of Group 1 (as identified in **Exhibit A** attached hereto) will receive overtime compensation for 37.5% of their *unrecorded*[3] overtime hours during workweeks when the minimum salary basis requirement arguably was not met;

(iv).    18 members of Group 1 (as identified in **Exhibit A** attached hereto) will receive overtime compensation for 0% to 20% of their alleged *unrecorded* overtime hours during workweeks when the minimum salary basis requirement arguably was not met, based upon the parties' assessment of the credibility of their estimates of unrecorded time;

(v).    all members will receive overtime compensation for 100% of their alleged *recorded* overtime hours and 37.5% of their alleged *unrecorded* overtime hours for each workweek they were attending the MPRI training school or the USAREC training school; and

(vi).    all members will receive an additional 60% of their total overtime compensation (as calculated in parts (i)-(v) above) as liquidated damages and interest.

b.    Calculation of the amounts to be recovered by the Group 2 was based primarily on the following:

(i).    all members will receive overtime compensation for 40% of their alleged *recorded* overtime hours during each workweek;

---

[2] For a small number of members, the payroll records necessary to make these calculations were partially incomplete or otherwise unavailable. In those instances, the Parties reached an agreement as to what amount those members would recover based on the best available information.

[3] For a variety of reasons, many members reported having actually worked more overtime hours than they recorded on their timesheets. Compensation for those hours was based upon estimates provided by each such member, and is referred to as "unrecorded" hours for purposes of the settlement.

(ii).    all members will receive overtime compensation for 37.5% of their alleged *unrecorded* overtime hours during each workweek; and

(iii).    all members will receive an additional 30% of their total overtime compensation (as calculated in parts (i)-(ii) above) as liquidated damages and interest.

12.    <u>Incentive Payments</u>.    In addition to the amounts calculated based on the above percentages, the following members of the Settlement Class will receive incentive payments in the amounts listed below, which are included in, and not in addition to, the Global Settlement Amount set forth above in Paragraph 9.a.:

a.    Leonard Sanders: $14,300.

b.    Christine McCarron: $3,000.

c.    Esther Cole, Gary Dacus, Albert Garza, Katherine Hamilton, Dennis Hostetter, Tony Randolph McCloud, Michelle Williams, Jonathan Bingham, Robert Blackstone, Didi Brown, Elvin Delgado, Lanessa Ferguson, Andrew Klenke, Joseph Lanham, Michael Noble, and Roger Young: $1,000.

d.    The Incentive Payments are not compensation for any allegedly unpaid wages or otherwise remuneration for employment; but rather, compensate certain individuals for their participation in furthering the clams of all Collection Action Settlement Members.    Incentive Payments shall not be subject to payroll withholdings and shall be reported on an IRS Form 1099 in the amounts set forth herein.

e.    Plaintiff, and those Collective Action Settlement Members receiving Incentive Payments shall be wholly responsible for any relevant taxes and tax reporting necessary with respect to the incentive awards.

13.    <u>Delivery of Settlement Payments</u>.    Promptly after Final Approval, Collective Action Counsel will provide Defendants with the most recently obtained mailing address for each Collective Action Settlement Member.  Defendants shall mail to the address provided (a) the Individual Settlement Payments, less applicable and customary employee withholdings, to the Collective Action Settlement Members and (b) the Collective Action Counsel's attorneys' fees and costs within thirty (30) calendar days of the Effective Date.

14.    <u>Attorneys' Fees, Costs, and Expenses Allocation</u>: Collective Action Counsel shall decide amongst themselves the appropriate distribution of monies to cover their attorneys' fees, costs, and expenses between the two law firms.  Collective Action Counsel agree that, upon Defendants' payment of attorneys' fees and costs approved by the Court, Defendants will forever and finally have satisfied all of their obligations to Collective Action Counsel concerning payment of attorneys' fees, costs and expenses in the Collective Action, and will forever and finally be absolved, released and discharged of any liability whatsoever to Collective Action Counsel concerning attorneys' fees, costs and expenses in the Collective Action.  Also, under no circumstances will Collective Action Counsel sue Defendants for, or because of, relating to, concerning, or as a result of any payment or allocation of attorneys' fees, costs and expenses; under no circumstances will Defendants be liable to Collective Action Counsel for, because of, relating to, concerning, or as a result of, any payment or allocation of attorneys' fees, costs, and expenses; and Collective Action Counsel release Defendants from any and all claims because of, relating to, concerning, or as a result of any payment or allocation of attorneys' fees, costs and expenses.

V.      **RIGHT TO WITHDRAW**

15.      In the event that the Court does not approve the Settlement Agreement, and the basis for the Court's decision does not involve a material term of the Settlement Agreement, the Parties shall make good faith efforts to modify the Settlement Agreement so as to gain the Court's approval.  In the event that the Court issues an order finally approving the Settlement Agreement with a material change to the terms or conditions set forth herein, the Parties shall each have ten (10) calendar days to withdraw from the Settlement Agreement.  The right to withdraw may be exercised immediately upon submission of written notice to the other Party and filing with the Court.  If either Party chooses to exercise the right to withdraw as set forth herein, the Settlement Agreement shall be null and void *ab initio* and the Parties shall be restored, without prejudice, to their respective pre-settlement litigation positions.

VI.     **RELEASE BY THE COLLECTIVE ACTION SETTLEMENT MEMBERS; DISMISSAL**

16.      Upon the Court's Final Approval, except as to such rights or claims as may be created by the Settlement Agreement, each Collective Action Settlement Member, on their behalf, and on behalf of their respective current, former and future heirs, issue, spouses, next-of-kin, executors, administrators, agents, and attorneys, hereby:

a.           completely releases and forever discharges Defendants, their past, present and future officers, directors, employees, agents, attorneys, partners, principals, joint venturers, subsidiaries, affiliates, divisions, parents, predecessors, successors, and assigns ("Releasees") from the Claims;

b.           acknowledges, represents, covenants and warrants that the obligations imposed by this release shall be forever binding, and that this release may not be modified,

amended, annulled, rescinded or otherwise changed unless in writing signed by Releasees, which expressly refers to this release and the Settlement Agreement;

        c.        acknowledges, represents, covenants and warrants that they have not made any assignment of any right, claim, or cause of action covered by this release to any individual, corporation, or any other legal entity whatsoever;

        d.        forever agrees that they shall not institute, nor accept any other relief from, any other suit, class or collective action, administrative claim or other claim of any sort or nature whatsoever against Releasees, relating to the Claims for any period up to and including the date of the Court's Final Approval; and

        e.        waives any right to assert hereafter that of the Claims have through ignorance, oversight, or error, been omitted from the terms of the Settlement Agreement.

        17.     Within five (5) calendar days of the Court's Final Approval, Collective Action Counsel will file a Consent Judgment dismissing the Collective Action with prejudice and, wherein, the Parties shall waive all rights of appeal.

## VII.   DUTIES OF THE PARTIES PRIOR TO FINAL APPROVAL

        18.     Following execution of the Settlement Agreement, Plaintiff shall move the Court for the entry of an order requesting that the Court finally approve the Settlement Agreement as a fair and reasonable resolution to a bona fide dispute over FLSA provisions.  The motion shall set forth, in detail, the facts necessary for the Court to enter a Final Order.  Plaintiff will afford Defendants an appropriate time to review Plaintiff's motion prior to filing and the Parties shall work together to agree to a form of motion that both parties believe is appropriate for the Court's consideration.  As a result, the Parties do not believe a fairness hearing is required to obtain the

Court's Final Approval; however, the Parties will leave whether or not to hold a fairness hearing to the Court's discretion in the motion.

## VIII.  **MUTUAL FULL COOPERATION**

19.    The Parties agree to cooperate fully with each other to accomplish the terms of the Settlement Agreement, including but not limited to, execution of such documents and taking such other action as reasonably may be necessary to implement the terms of the Settlement Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate the Settlement Agreement and the terms set forth herein.  As soon as practicable after execution of the Settlement Agreement, Collective Action Counsel shall, with the assistance and cooperation of Defendants and their counsel, take all necessary steps to secure the Court's final approval of the Settlement Agreement.  As a material term of the Settlement Agreement, and consistent with Collective Action Counsel's obligations to the Collective Action Settlement Members, Collective Action Counsel agree that their duties and responsibilities contemplated by this Paragraph require their full and vigorous defense of all aspects of the Settlement Agreement by Collective Action Counsel, at the direction of Jeremi Young, Esq., from any objecting party or individual including Collective Action Counsel's full and vigorous defense of all aspects of the Settlement Agreement through the conclusion of any appeal and final adjudication of any objection.

## IX.    NOTICES

20.    Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

**To Plaintiff and the Collective Action Members:**

Jeremi K. Young, Esq.
THE YOUNG LAW FIRM, P.C.
112 West 8th Avenue, Suite 900-D
Amarillo, Texas 79101
Telephone: (806) 331-1800
Facsimile: (806) 398-9095
E-mail: jyoung@youngfirm.com

**To Defendants:**

C. Allen Foster, Esq.
Craig Etter, Esq.
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard, Suite 1200
McLean, VA 22102
Telephone:  (703) 749-1300
Facsimile: (703) 749-1301
E-mail : etterc@gtlaw.com

All notices, demands or other communications by and between counsel for the Parties shall be in writing, transmitted via e-mail or facsimile, and shall be deemed to have been duly given as of the third business day after transmission.

## X.    LIMITATIONS ON DISCLOSURE

21.    Plaintiff and Collective Action Counsel represent that they do not currently plan any disclosure of this settlement other than in court filings and connection with notice contemplated herein; however, that, in the future, if they make any disclosure, such disclosure

will be limited to a statement that he or they successfully represented a class of 210 plaintiffs in a FLSA action against a major government Contractor.

## XI.    **MISCELLANEOUS**

22.    <u>No Admission of Liability or Regarding Class Certification.</u>   The Parties agree that FLSA collective action treatment pursuant to the terms of the Settlement Agreement are for settlement purposes only.   Nothing in the Settlement Agreement shall be construed as an admission or acknowledgement of any kind that Defendants are either liable for the Claims of this or any other action should be given collective action treatment, certified, or remain certified. Further, neither the Settlement Agreement nor the Court's actions with regard to the Settlement Agreement shall be admissible in any court or other tribunal regarding the propriety of collective action treatment or any alleged Claims against Defendants in this or any other proceeding.   In the event that the Settlement Agreement is not approved by the Court, is terminated, or otherwise fails to be effective or enforceable, Defendants shall not be deemed to have waived, limited, or affected in any way any of their objections or defenses to this or any other proceeding, including, but not limited to, their objections and defenses to liability and FLSA collective action treatment.

23.    <u>Negotiated Agreement.</u>   The Parties hereto agree that the terms and conditions of the Settlement Agreement are the result of lengthy, intensive, arms-length negotiations between the Parties, and the Settlement Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or his, her or its counsel participated in the drafting of the Settlement Agreement.

24.    <u>Captions and Recitals.</u>   Paragraph titles or captions contained herein are inserted as a manner of convenience and for reference, and in no way define, limit, extend, or describe

the scope of the Settlement Agreement or any provision hereof.  The Recitals set forth above are incorporated herein as terms of the Settlement Agreement.

25.    <u>Modification.</u>    The Settlement Agreement may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court.  This Settlement Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

26.    <u>Entire Agreement.</u>  The Settlement Agreement contains the entire agreement between the Parties and Collective Action Settlement Members relating to the settlement contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such a Party's legal counsel, are superseded by the Settlement Agreement.  No rights hereunder may be waived except in writing.  This is an integrated agreement.

27.    <u>Binding on Successors and Assigns.</u>  The Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, issue, next-of-kin, executors, administrators, successors and assigns.

28.    <u>Stay of Proceedings.</u> Pending completion of the settlement process, the Parties agree to continue to stay all proceedings in the Collective Action, except such as are necessary to implement the settlement itself.

29.    <u>Counterparts.</u>  The Settlement Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to the Parties and each of them.

Dated: September 9, 2009

LEONARD SANDERS, individually and as
COLLECTIVE ACTION REPRESENTATIVE,

_____

COLLECTIVE ACTION COUNSEL, on behalf of
themselves and COLLECTIVE ACTION
SETTLEMENT MEMBERS,

_____
The Young Law Firm, PC
By:

_____
Lovell, Lovell, Newsom & Isern, L.L.P.
By:

L-3 SERVICES, INC., on behalf of itself and
MPRI, INC.,

_____
By:

_____
Greenberg Traurig, LLP
By:

_____
Williams Box Forsee & Bullard PC.
By:

29.    <u>Counterparts.</u>  The Settlement Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to the Parties and each of them.

Dated: September 9, 2009

LEONARD SANDERS, individually and as
COLLECTIVE ACTION REPRESENTATIVE,

_____

COLLECTIVE ACTION COUNSEL, on behalf of
themselves and COLLECTIVE ACTION
SETTLEMENT MEMBERS,

_____
The Young Law Firm, PC
By: Jeremi K. Young

_____
Lovell, Lovell, Newsom & Isern, L.L.P.
By: Tim Newsom

L-3 SERVICES, INC., on behalf of itself and
MPRI, INC.,

_____
By:

_____
Greenberg Traurig, LLP
By:

_____
Williams Box Forsee & Bullard PC.
By:

29.    <u>Counterparts.</u>  The Settlement Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to the Parties and each of them.

Dated: September 9, 2009

LEONARD SANDERS, individually and as
COLLECTIVE ACTION REPRESENTATIVE,

_____

COLLECTIVE ACTION COUNSEL, on behalf of
themselves and COLLECTIVE ACTION
SETTLEMENT MEMBERS,

_____
The Young Law Firm, PC
By:

_____
Lovell, Lovell, Newsom & Isern, L.L.P.
By:

L-3 SERVICES, INC., on behalf of itself and
MPRI, INC.,

_____
By: THomAs O. Miiller

_____
Greenberg Traurig, LLP
By:

_____
Williams Box Forsee & Bullard PC.
By:

29.   <u>Counterparts.</u>  The Settlement Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to the Parties and each of them.

Dated: September 9, 2009

LEONARD SANDERS, individually and as
COLLECTIVE ACTION REPRESENTATIVE,

_____

COLLECTIVE ACTION COUNSEL, on behalf of
themselves and COLLECTIVE ACTION
SETTLEMENT MEMBERS,

_____
The Young Law Firm, PC
By:

_____
Lovell, Lovell, Newsom & Isern, L.L.P.
By:

L-3 SERVICES, INC., on behalf of itself and
MPRI, INC.,

_____
By:

_____
Greenberg Traurig, LLP
By: DAVID G. ThomAS

_____
Williams Box Forsee & Bullard PC.
By:

29.    Counterparts. The Settlement Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to the Parties and each of them.

Dated: September 9, 2009

LEONARD SANDERS, individually and as
COLLECTIVE ACTION REPRESENTATIVE,

_____

COLLECTIVE ACTION COUNSEL, on behalf of
themselves and COLLECTIVE ACTION
SETTLEMENT MEMBERS,

_____
The Young Law Firm, PC
By:

_____
Lovell, Lovell, Newsom & Isern, L.L.P.
By:

L-3 SERVICES, INC., on behalf of itself and
MPRI, INC.,

_____
By:

_____
Greenberg Traurig, LLP
By:

_____
Williams Box Forsee & Bullard PC.
By:    Michael D. O'Neal

18

## Exhibit A

| | Name | Total Payment | W-2 Wages | 1099 Liquidated Damages | Pro-Rata Attorneys' Fees | Pro-Rata Costs |
|---|---|---|---|---|---|---|
| | **Group 1** | | | | | |
| 1 | Adams Fawn | $651.82 | $407.39 | $244.43 | $1,582.20 | $203.51 |
| 2 | Adfield Robert | $310.42 | $194.01 | $116.41 | $1,582.20 | $203.51 |
| 3 | Ali Oscar | $16,229.98 | $10,143.74 | $6,086.24 | $1,582.20 | $203.51 |
| 4 | Antoine Travis | $1,040.61 | $650.38 | $390.23 | $1,582.20 | $203.51 |
| 5 | Arroyo Timothy | $643.78 | $402.36 | $241.42 | $1,582.20 | $203.51 |
| 6 | Bennett Timothy | $2,106.02 | $1,316.26 | $789.76 | $1,582.20 | $203.51 |
| 7 | Berry Don | $319.07 | $199.42 | $119.65 | $1,582.20 | $203.51 |
| 8 | Bocko Daniel | $14,072.00 | $8,795.00 | $5,277.00 | $1,582.20 | $203.51 |
| 9 | Bons Joseph | $100.00 | $62.50 | $37.50 | $1,582.20 | $203.51 |
| 10 | Boyd Stephen | $5,513.17 | $3,445.73 | $2,067.44 | $1,582.20 | $203.51 |
| 11 | Bracht Jason | $366.66 | $229.16 | $137.50 | $1,582.20 | $203.51 |
| 12 | Braxton Damita | $11,910.88 | $7,444.30 | $4,466.58 | $1,582.20 | $203.51 |
| 13 | Brendlinger Christopher | $5,065.02 | $3,165.64 | $1,899.38 | $1,582.20 | $203.51 |
| 14 | Cadena Maria | $694.54 | $434.09 | $260.45 | $1,582.20 | $203.51 |
| 15 | Cain Leonard | $2,045.98 | $1,278.74 | $767.24 | $1,582.20 | $203.51 |
| 16 | Coates Robert | $3,195.25 | $1,997.03 | $1,198.22 | $1,582.20 | $203.51 |
| 17 | Cole Esther | $3,530.13 | $2,206.33 | $1,323.80 | $1,582.20 | $203.51 |
| 18 | Comer Robert | $100.00 | $62.50 | $37.50 | $1,582.20 | $203.51 |
| 19 | Connor Vernon | $421.79 | $263.62 | $158.17 | $1,582.20 | $203.51 |
| 20 | Dacus Gary | $473.35 | $295.84 | $177.51 | $1,582.20 | $203.51 |
| 21 | Dean Marion | $259.57 | $162.23 | $97.34 | $1,582.20 | $203.51 |
| 22 | Deans Alexander | $11,838.96 | $7,399.35 | $4,439.61 | $1,582.20 | $203.51 |
| 23 | Dickerson Gregory | $316.32 | $197.70 | $118.62 | $1,582.20 | $203.51 |
| 24 | Dume Donald | $710.48 | $444.05 | $266.43 | $1,582.20 | $203.51 |
| 25 | Falcon Thomas | $778.83 | $486.77 | $292.06 | $1,582.20 | $203.51 |
| 26 | Farley Richard | $2,144.91 | $1,340.57 | $804.34 | $1,582.20 | $203.51 |
| 27 | Fitzgerald Anthony | $1,084.22 | $677.64 | $406.58 | $1,582.20 | $203.51 |
| 28 | Foy James | $166.54 | $104.09 | $62.45 | $1,582.20 | $203.51 |
| 29 | Franks Gordon | $161.34 | $100.84 | $60.50 | $1,582.20 | $203.51 |
| 30 | Garza Albert | $3,738.50 | $2,336.56 | $1,401.94 | $1,582.20 | $203.51 |
| 31 | Gilmore Bobby | $1,656.96 | $1,035.60 | $621.36 | $1,582.20 | $203.51 |
| 32 | Gomez Xavier | $20,371.92 | $12,732.45 | $7,639.47 | $1,582.20 | $203.51 |
| 33 | Gomez-Roman Ruben | $11,748.03 | $7,342.52 | $4,405.51 | $1,582.20 | $203.51 |

## Exhibit A

| | Name | Total Payment | W-2 Wages | 1099 Liquidated Damages | Pro-Rata Attorneys' Fees | Pro-Rata Costs |
|---|---|---|---|---|---|---|
| 34 | Gonzalez Francisco | $5,244.64 | $3,277.90 | $1,966.74 | $1,582.20 | $203.51 |
| 35 | Gotay Eliesel | $884.29 | $552.68 | $331.61 | $1,582.20 | $203.51 |
| 36 | Hall Robert | $823.63 | $514.77 | $308.86 | $1,582.20 | $203.51 |
| 37 | Hamilton Katherine | $1,324.90 | $828.06 | $496.84 | $1,582.20 | $203.51 |
| 38 | Hane Jeffery | $100.00 | $62.50 | $37.50 | $1,582.20 | $203.51 |
| 39 | Hostetter Dennis | $582.13 | $363.83 | $218.30 | $1,582.20 | $203.51 |
| 40 | Hufford Eugene | $2,570.66 | $1,606.66 | $964.00 | $1,582.20 | $203.51 |
| 41 | Jackson David | $3,466.32 | $2,166.45 | $1,299.87 | $1,582.20 | $203.51 |
| 42 | Jones James | $13,269.02 | $8,293.14 | $4,975.88 | $1,582.20 | $203.51 |
| 43 | Jordan Bruce | $187.15 | $116.97 | $70.18 | $1,582.20 | $203.51 |
| 44 | Kellem Elbert | $445.60 | $278.50 | $167.10 | $1,582.20 | $203.51 |
| 45 | Kim In | $20,905.30 | $13,065.81 | $7,839.49 | $1,582.20 | $203.51 |
| 46 | Knight Billy | $4,878.93 | $3,049.33 | $1,829.60 | $1,582.20 | $203.51 |
| 47 | Koerner Troy | $939.55 | $587.22 | $352.33 | $1,582.20 | $203.51 |
| 48 | Kyzima Steven | $585.30 | $365.81 | $219.49 | $1,582.20 | $203.51 |
| 49 | LeAnna Todd | $1,419.90 | $887.44 | $532.46 | $1,582.20 | $203.51 |
| 50 | Lockhart Reginald | $100.00 | $62.50 | $37.50 | $1,582.20 | $203.51 |
| 51 | Loving Stephen | $3,951.02 | $2,469.39 | $1,481.63 | $1,582.20 | $203.51 |
| 52 | Maddox Shawn | $1,380.70 | $862.94 | $517.76 | $1,582.20 | $203.51 |
| 53 | Marquadt Daniel | $1,488.09 | $930.06 | $558.03 | $1,582.20 | $203.51 |
| 54 | McCloud Tony-Randolph | $1,904.67 | $1,190.42 | $714.25 | $1,582.20 | $203.51 |
| 55 | McKibbin Luis | $124.26 | $77.66 | $46.60 | $1,582.20 | $203.51 |
| 56 | Miltenberger Anthony | $6,645.76 | $4,153.60 | $2,492.16 | $1,582.20 | $203.51 |
| 57 | Mobley Tilden | $10,869.20 | $6,793.25 | $4,075.95 | $1,582.20 | $203.51 |
| 58 | Nichols Marilyn | $1,863.26 | $1,164.54 | $698.72 | $1,582.20 | $203.51 |
| 59 | Novak Amber | $1,018.26 | $636.41 | $381.85 | $1,582.20 | $203.51 |
| 60 | Palevich RandyLayne | $8,471.68 | $5,294.80 | $3,176.88 | $1,582.20 | $203.51 |
| 61 | Peterson Freeman | $200.27 | $125.17 | $75.10 | $1,582.20 | $203.51 |
| 62 | Recoder Carlos | $444.53 | $277.83 | $166.70 | $1,582.20 | $203.51 |
| 63 | Reum Martel | $4,087.89 | $2,554.93 | $1,532.96 | $1,582.20 | $203.51 |
| 64 | Riggs Alvin | $11,885.49 | $7,428.43 | $4,457.06 | $1,582.20 | $203.51 |
| 65 | Roberson Clarence | $3,683.02 | $2,301.89 | $1,381.13 | $1,582.20 | $203.51 |
| 66 | Scott James | $217.70 | $136.06 | $81.64 | $1,582.20 | $203.51 |
| 67 | Self Lynn | $162.11 | $101.32 | $60.79 | $1,582.20 | $203.51 |

## Exhibit A

|  | Name | Total Payment | W-2 Wages | 1099 Liquidated Damages | Pro-Rata Attorneys' Fees | Pro-Rata Costs |
|---|---|---|---|---|---|---|
| 68 | Setters Wendell | $198.21 | $123.88 | $74.33 | $1,582.20 | $203.51 |
| 69 | Simmons Joseph | $22,396.58 | $13,997.86 | $8,398.72 | $1,582.20 | $203.51 |
| 70 | Simon Christopher | $762.29 | $476.43 | $285.86 | $1,582.20 | $203.51 |
| 71 | Simon Ryan | $100.00 | $62.50 | $37.50 | $1,582.20 | $203.51 |
| 72 | Spann Jackie | $1,469.44 | $918.40 | $551.04 | $1,582.20 | $203.51 |
| 73 | Summerlin Justin | $1,518.43 | $949.02 | $569.41 | $1,582.20 | $203.51 |
| 74 | Tipton Jason | $972.64 | $607.90 | $364.74 | $1,582.20 | $203.51 |
| 75 | Turner Jibreel | $4,025.74 | $2,516.09 | $1,509.65 | $1,582.20 | $203.51 |
| 76 | Warters Larry | $2,944.29 | $1,840.18 | $1,104.11 | $1,582.20 | $203.51 |
| 77 | West Carla | $6,807.18 | $4,254.49 | $2,552.69 | $1,582.20 | $203.51 |
| 78 | Williams Michelle | $3,706.14 | $2,316.34 | $1,389.80 | $1,582.20 | $203.51 |
| 79 | Wills Anthony | $4,069.04 | $2,543.15 | $1,525.89 | $1,582.20 | $203.51 |
| 80 | Zell Jerold | $345.12 | $215.70 | $129.42 | $1,582.20 | $203.51 |
| 81 | Zepeda Daniel | $530.30 | $331.44 | $198.86 | $1,582.20 | $203.51 |
|  | **Group 2** |  |  |  |  |  |
| 82 | Adamo Robert | $533.40 | $410.31 | $123.09 | $1,582.20 | $203.51 |
| 83 | Adams Gerald | $515.12 | $396.25 | $118.87 | $1,582.20 | $203.51 |
| 84 | Allen Brad | $108.22 | $83.25 | $24.97 | $1,582.20 | $203.51 |
| 85 | Allen Scott | $114.89 | $88.38 | $26.51 | $1,582.20 | $203.51 |
| 86 | Arbagy Timothy | $232.99 | $179.22 | $53.77 | $1,582.20 | $203.51 |
| 87 | Arnold Brian | $1,528.80 | $1,176.00 | $352.80 | $1,582.20 | $203.51 |
| 88 | Barnes Frank | $335.53 | $258.10 | $77.43 | $1,582.20 | $203.51 |
| 89 | Bebo Christopher | $622.90 | $479.15 | $143.75 | $1,582.20 | $203.51 |
| 90 | Bellamy Roger | $172.52 | $132.71 | $39.81 | $1,582.20 | $203.51 |
| 91 | Berry Gloria | $1,203.75 | $925.96 | $277.79 | $1,582.20 | $203.51 |
| 92 | Bingham Jonathan | $1,702.06 | $1,309.28 | $392.78 | $1,582.20 | $203.51 |
| 93 | Blackstone Robert | $2,464.42 | $1,895.71 | $568.71 | $1,582.20 | $203.51 |
| 94 | Blossom Christopher | $1,317.67 | $1,013.59 | $304.08 | $1,582.20 | $203.51 |
| 95 | Booker Yolanda | $926.85 | $712.96 | $213.89 | $1,582.20 | $203.51 |
| 96 | Boyce Gregory | $100.00 | $76.92 | $23.08 | $1,582.20 | $203.51 |
| 97 | Braggs Charles | $892.85 | $686.81 | $206.04 | $1,582.20 | $203.51 |
| 98 | Branch Gerald | $100.00 | $76.92 | $23.08 | $1,582.20 | $203.51 |
| 99 | Brooks Robert | $198.13 | $152.41 | $45.72 | $1,582.20 | $203.51 |
| 100 | Brown Frederick | $5,388.72 | $4,145.17 | $1,243.55 | $1,582.20 | $203.51 |

## Exhibit A

| | Name | Total Payment | W-2 Wages | 1099 Liquidated Damages | Pro-Rata Attorneys' Fees | Pro-Rata Costs |
|---|---|---|---|---|---|---|
| 101 | Brown Didi | $245.77 | $189.05 | $56.72 | $1,582.20 | $203.51 |
| 102 | Burkhardt Michael | $50.00 | $38.46 | $11.54 | $1,582.20 | $203.51 |
| 103 | Burriell Robert | $903.45 | $694.96 | $208.49 | $1,582.20 | $203.51 |
| 104 | Burrow Quinton | $295.63 | $227.41 | $68.22 | $1,582.20 | $203.51 |
| 105 | Catcher Timothy | $534.26 | $410.97 | $123.29 | $1,582.20 | $203.51 |
| 106 | Chavez Peter | $50.00 | $38.46 | $11.54 | $1,582.20 | $203.51 |
| 107 | Clark Hamid | $336.61 | $258.93 | $77.68 | $1,582.20 | $203.51 |
| 108 | Cleveland Bernard | $564.42 | $434.17 | $130.25 | $1,582.20 | $203.51 |
| 109 | Coley Hosea | $418.17 | $321.67 | $96.50 | $1,582.20 | $203.51 |
| 110 | Davis Belinda | $1,394.03 | $1,072.33 | $321.70 | $1,582.20 | $203.51 |
| 111 | Dejesus Wilfredo | $100.00 | $76.92 | $23.08 | $1,582.20 | $203.51 |
| 112 | Delgado Elvin | $943.98 | $726.14 | $217.84 | $1,582.20 | $203.51 |
| 113 | Duplantier Sean | $126.70 | $97.46 | $29.24 | $1,582.20 | $203.51 |
| 114 | Edwards Howard | $50.00 | $38.46 | $11.54 | $1,582.20 | $203.51 |
| 115 | Elwess Adam | $440.58 | $338.91 | $101.67 | $1,582.20 | $203.51 |
| 116 | Enderson David | $100.00 | $76.92 | $23.08 | $1,582.20 | $203.51 |
| 117 | Epting Christopher | $1,819.92 | $1,399.94 | $419.98 | $1,582.20 | $203.51 |
| 118 | Fareira Jason | $508.61 | $391.24 | $117.37 | $1,582.20 | $203.51 |
| 119 | Ferguson Lanessa | $1,744.09 | $1,341.61 | $402.48 | $1,582.20 | $203.51 |
| 120 | Fia Somoa | $106.25 | $81.73 | $24.52 | $1,582.20 | $203.51 |
| 121 | Fleming Tige | $88.75 | $68.27 | $20.48 | $1,582.20 | $203.51 |
| 122 | Ford Amanda | $161.14 | $123.95 | $37.19 | $1,582.20 | $203.51 |
| 123 | Foster Jarvis | $331.60 | $255.08 | $76.52 | $1,582.20 | $203.51 |
| 124 | Gautreaux Kevin | $128.75 | $99.04 | $29.71 | $1,582.20 | $203.51 |
| 125 | Gist Anthony | $2,168.67 | $1,668.21 | $500.46 | $1,582.20 | $203.51 |
| 126 | Gramling Bobby | $421.08 | $323.91 | $97.17 | $1,582.20 | $203.51 |
| 127 | Gray Shane | $1,245.96 | $958.43 | $287.53 | $1,582.20 | $203.51 |
| 128 | Grim Jason | $605.74 | $465.95 | $139.79 | $1,582.20 | $203.51 |
| 129 | Hammond Jeffery | $3,943.26 | $3,033.28 | $909.98 | $1,582.20 | $203.51 |
| 130 | Hamilton Frances | $546.36 | $420.28 | $126.08 | $1,582.20 | $203.51 |
| 131 | Henderson Lakedric | $100.00 | $76.92 | $23.08 | $1,582.20 | $203.51 |
| 132 | Henley Earlie | $11,331.74 | $8,716.72 | $2,615.02 | $1,582.20 | $203.51 |
| 133 | Hernandez James | $1,213.42 | $933.40 | $280.02 | $1,582.20 | $203.51 |
| 134 | Herring Willie | $50.00 | $38.46 | $11.54 | $1,582.20 | $203.51 |

**Exhibit A**

| | Name | Total Payment | W-2 Wages | 1099 Liquidated Damages | Pro-Rata Attorneys' Fees | Pro-Rata Costs |
|---|---|---|---|---|---|---|
| 135 | Hexter Kristoffer | $376.74 | $289.80 | $86.94 | $1,582.20 | $203.51 |
| 136 | Hopson Hugh | $85.46 | $65.74 | $19.72 | $1,582.20 | $203.51 |
| 137 | Hosier Jeffrey | $970.84 | $746.80 | $224.04 | $1,582.20 | $203.51 |
| 138 | Jackson Jimmie | $463.03 | $356.18 | $106.85 | $1,582.20 | $203.51 |
| 139 | Jamison Brandon | $504.37 | $387.98 | $116.39 | $1,582.20 | $203.51 |
| 140 | Jones Robert | $24,309.19 | $18,699.38 | $5,609.81 | $1,582.20 | $203.51 |
| 141 | Jozwiak David | $1,590.50 | $1,223.46 | $367.04 | $1,582.20 | $203.51 |
| 142 | Kellem Elbert | $362.05 | $278.50 | $83.55 | $1,582.20 | $203.51 |
| 143 | Kemp Victor | $2,399.76 | $1,845.97 | $553.79 | $1,582.20 | $203.51 |
| 144 | Klenke Andrew | $159.72 | $122.86 | $36.86 | $1,582.20 | $203.51 |
| 145 | Lake David | $184.68 | $142.06 | $42.62 | $1,582.20 | $203.51 |
| 146 | Lanham Joseph | $239.30 | $184.08 | $55.22 | $1,582.20 | $203.51 |
| 147 | Laughlin Christopher | $281.63 | $216.64 | $64.99 | $1,582.20 | $203.51 |
| 148 | Lehman Danny | $966.63 | $743.56 | $223.07 | $1,582.20 | $203.51 |
| 149 | Lewis Andrew | $87.49 | $67.30 | $20.19 | $1,582.20 | $203.51 |
| 150 | Marinaro Anthony | $100.00 | $76.92 | $23.08 | $1,582.20 | $203.51 |
| 151 | Matelski James | $100.00 | $76.92 | $23.08 | $1,582.20 | $203.51 |
| 152 | McCarron Christine | $0.00 | $0.00 | $0.00 | $1,582.20 | $203.51 |
| 153 | McCuiston Harvey | $2,630.26 | $2,023.28 | $606.98 | $1,582.20 | $203.51 |
| 154 | McDonnell Michael | $74.04 | $56.95 | $17.09 | $1,582.20 | $203.51 |
| 155 | McKinney Marcus | $82.96 | $63.82 | $19.14 | $1,582.20 | $203.51 |
| 156 | McLeod Monica | $744.29 | $572.53 | $171.76 | $1,582.20 | $203.51 |
| 157 | Melton Carrington | $12,932.17 | $9,947.82 | $2,984.35 | $1,582.20 | $203.51 |
| 158 | Merritt Sean | $443.12 | $340.86 | $102.26 | $1,582.20 | $203.51 |
| 159 | Mitchell Leylan | $807.11 | $620.85 | $186.26 | $1,582.20 | $203.51 |
| 160 | Mosley Gary | $1,121.37 | $862.59 | $258.78 | $1,582.20 | $203.51 |
| 161 | Moultrie James | $89.92 | $69.17 | $20.75 | $1,582.20 | $203.51 |
| 162 | Nared-Phillips Deanna | $532.60 | $409.69 | $122.91 | $1,582.20 | $203.51 |
| 163 | Newman Charles | $50.00 | $38.46 | $11.54 | $1,582.20 | $203.51 |
| 164 | Noble Michael | $271.55 | $208.88 | $62.67 | $1,582.20 | $203.51 |
| 165 | Ogle Chris | $2,264.81 | $1,742.16 | $522.65 | $1,582.20 | $203.51 |
| 166 | Ortolaza-Cruz Abel | $841.15 | $647.04 | $194.11 | $1,582.20 | $203.51 |
| 167 | Penning Steven | $70.47 | $54.21 | $16.26 | $1,582.20 | $203.51 |
| 168 | Pierce Tracy | $2,563.60 | $1,972.00 | $591.60 | $1,582.20 | $203.51 |

## Exhibit A

| | Name | Total Payment | W-2 Wages | 1099 Liquidated Damages | Pro-Rata Attorneys' Fees | Pro-Rata Costs |
|---|---|---|---|---|---|---|
| 169 | Price Gerry | $967.32 | $744.09 | $223.23 | $1,582.20 | $203.51 |
| 170 | Procell Franklin | $150.55 | $115.81 | $34.74 | $1,582.20 | $203.51 |
| 171 | Richter Scott | $100.00 | $76.92 | $23.08 | $1,582.20 | $203.51 |
| 172 | Roate Brian | $843.38 | $648.75 | $194.63 | $1,582.20 | $203.51 |
| 173 | Robinson Charles | $360.53 | $277.33 | $83.20 | $1,582.20 | $203.51 |
| 174 | Roswell Jason | $630.25 | $484.81 | $145.44 | $1,582.20 | $203.51 |
| 175 | Sanders Leonard | $700.00 | $538.46 | $161.54 | $1,582.20 | $203.51 |
| 176 | Shuff James | $123.50 | $95.00 | $28.50 | $1,582.20 | $203.51 |
| 177 | Simmers Greg | $981.10 | $754.69 | $226.41 | $1,582.20 | $203.51 |
| 178 | Smith Johnny | $1,469.59 | $1,130.45 | $339.14 | $1,582.20 | $203.51 |
| 179 | Smith Reginald | $1,107.00 | $851.54 | $255.46 | $1,582.20 | $203.51 |
| 180 | Smith Jeffery | $100.00 | $76.92 | $23.08 | $1,582.20 | $203.51 |
| 181 | Starks Terrence | $1,813.76 | $1,395.20 | $418.56 | $1,582.20 | $203.51 |
| 182 | Stephenson Kenneth | $268.29 | $206.38 | $61.91 | $1,582.20 | $203.51 |
| 183 | Stiggers Abraham | $100.00 | $76.92 | $23.08 | $1,582.20 | $203.51 |
| 184 | Stoa James | $50.00 | $38.46 | $11.54 | $1,582.20 | $203.51 |
| 185 | Suarez-Madera Federico | $2,098.20 | $1,614.00 | $484.20 | $1,582.20 | $203.51 |
| 186 | Thomas LaMarcus | $100.00 | $76.92 | $23.08 | $1,582.20 | $203.51 |
| 187 | Thompson Peter | $1,624.48 | $1,249.60 | $374.88 | $1,582.20 | $203.51 |
| 188 | Thrasher Roger | $5,458.52 | $4,198.86 | $1,259.66 | $1,582.20 | $203.51 |
| 189 | Threadgill James | $529.35 | $407.19 | $122.16 | $1,582.20 | $203.51 |
| 190 | Tisher Domenique | $50.00 | $38.46 | $11.54 | $1,582.20 | $203.51 |
| 191 | Torres Ernesto | $931.88 | $716.83 | $215.05 | $1,582.20 | $203.51 |
| 192 | Townsend Marvin | $100.00 | $76.92 | $23.08 | $1,582.20 | $203.51 |
| 193 | Turner Michael | $9,386.69 | $7,220.53 | $2,166.16 | $1,582.20 | $203.51 |
| 194 | Urias William | $50.00 | $38.46 | $11.54 | $1,582.20 | $203.51 |
| 195 | Walker Richard | $1,070.80 | $823.69 | $247.11 | $1,582.20 | $203.51 |
| 196 | Webb Cecil | $198.67 | $152.82 | $45.85 | $1,582.20 | $203.51 |
| 197 | Weigel Wayne | $1,489.31 | $1,145.62 | $343.69 | $1,582.20 | $203.51 |
| 198 | Williamson Ora | $1,030.09 | $792.38 | $237.71 | $1,582.20 | $203.51 |
| 199 | Wilson Corey | $1,874.89 | $1,442.22 | $432.67 | $1,582.20 | $203.51 |
| 200 | Wolfe Thomas | $375.02 | $288.48 | $86.54 | $1,582.20 | $203.51 |
| 201 | Womack Brvan | $1,608.95 | $1,237.65 | $371.30 | $1,582.20 | $203.51 |
| 202 | Young Leon | $189.66 | $145.89 | $43.77 | $1,582.20 | $203.51 |

## Exhibit A

| | Name | Total Payment | W-2 Wages | 1099 Liquidated Damages | Pro-Rata Attorneys' Fees | Pro-Rata Costs |
|---|---|---|---|---|---|---|
| 203 | Young Roger | $1,568.76 | $1,206.74 | $362.02 | $1,582.20 | $203.51 |
| 204 | Brown Norman | $900.00 | $692.31 | $207.69 | $1,582.20 | $203.51 |
| 205 | Entrott Thomas | $7,745.38 | $5,957.98 | $1,787.40 | $1,582.20 | $203.51 |
| 206 | Hogan Sean | $1,200.18 | $923.22 | $276.96 | $1,582.20 | $203.51 |
| 207 | Jones Richard | $700.00 | $538.46 | $161.54 | $1,582.20 | $203.51 |
| 208 | Peebles Ken | $1,300.00 | $1,000.00 | $300.00 | $1,582.20 | $203.51 |
| 209 | Vicente Victor | $143.64 | $110.49 | $33.15 | $1,582.20 | $203.51 |
| 210 | Young Steve | $1,200.00 | $923.08 | $276.92 | $1,582.20 | $203.51 |
| | | | | | | |
| Totals | | $452,655.99 | $306,407.83 | $146,248.16 | $332,262.00 | $42,737.10 |